## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| VOLA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 7:17-cv-01655-TMP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff, Vola Smith, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying her application for a period of disability and Disability Insurance Benefits ("DIB").  Smith timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 16).

---

[1] It appears, from the briefs filed by the Government in other Social Security cases and from news reports, that there is neither a Commissioner nor an Acting Commissioner currently serving in the Administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

The plaintiff was 47 years old on the date of the ALJ's opinion, on August 23, 2016. (Tr. at 66). Her past work experience includes employment as a nurse's aide, teacher's aide, tire builder, and motor vehicle assembler. (Tr. at 65). The plaintiff claims that she became disabled on August 21, 2013, from pain arising from or secondary to right epicondylar release surgery, right hand stiffness and pain, plantar foot lesions, and severe low back pain. (Tr. at 144-5).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. Id. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. Id. The decision depends on the medical evidence in the record. See Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or

equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. Id. If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. Id. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. Id. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. Id. The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; once that burden is met, the claimant must prove her inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process in this case, the ALJ found that the plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 26, 2014. (Tr. at 56). According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: "bilateral foot lesions, degenerative disc disease of the cervical and lumbar spine, obesity, degenerative joint disease of the right shoulder, and asthma." Id. He also determined that the plaintiff's "gastroesophageal reflux disease [(GERD)], hyperlipidemia, and essential hypertension" are non-severe. Id. The ALJ found that the plaintiff's severe and non-severe impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 57. The ALJ found the plaintiff to have mild restriction in activities of daily life, mild difficulties in social functioning, mild difficulties with regard to concentration, and no episodes of decompensation. (Tr. at 57). The ALJ determined that the plaintiff has the residual functional capacity to perform work at a sedentary level of exertion as defined in 20 C.F.R. 416.967(a) with additional limitations. Id. at 59. The ALJ further elaborated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following clarifications or exceptions. The claimant can occasionally push and/or pull with her

upper and lower right extremities. She can occasionally climb ramps or stairs, although she cannot climb ladders, ropes, or scaffolds. The claimant can occasionally balance and stoop, but never kneel, crouch or crawl. The claimant cannot reach overhead with her upper right extremity, although she can frequently reach in all other directions, handle, finger and feel with her right extremity. The claimant should avoid concentrated exposure to extreme heat, extreme cold, vibration, fumes, odors, chemicals, gases, and dust and poorly ventilated areas. The claimant should not operate a motor vehicle or be exposed to dangerous machinery, unprotected heights or work requiring walking on uneven or slippery surfaces.

(Tr. at 59)

According to the ALJ, the plaintiff is unable to perform any of her past relevant work, is a "younger individual," and has "a high school education and is able to communicate in English" as those terms are defined by the regulations. (Tr. at 65-6). He determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 66). Even though the plaintiff can perform only a limited range of sedentary work, the ALJ determined that there are a significant number of jobs in the national economy that she is capable of performing, such as surveillance system monitor, order clerk, and charge account clerk. (Tr. at 36). The ALJ concluded his findings by stating that Plaintiff "has not

been under a disability, as defined in the Social Security Act, from May 26, 2014, through the date of this decision." Id.

## II.     Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  See Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  Id.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  Miles,

84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. See Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

Claimant Smith argues that the ALJ's decision was erroneous and should be remanded for two reasons. (Doc. 11, p.1-2). First, she claims that the ALJ erred in "rejecting the findings of every treating physician. In doing so, the ALJ misrepresented or ignored evidence." Id. at 1. Second, Smith argues that the Appeals Council failed to consider medical records provided to it only because the care was obtained after the ALJ's decision. Id. at 2.

### A. Treating Medical Providers

A treating physician's testimony and opinions are entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. See 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence

supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing Lewis, 125 F.3d at 1440); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own medical records).

The court also must be aware of the fact that opinions such as whether a claimant is disabled or able to work, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of [her] condition." Lewis, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. See, e.g., 20 C.F.R. § 404.1546(c).

Smith contends that the ALJ should have given more weight to the findings of the claimant's treating podiatrist, Dr. Riase, and that the ALJ misrepresented the

medical findings of Dr. Sovic and Dr. Givhan, who treated the claimant for arm and back pain. (Doc. 11, pp. 9-12). The Commissioner replies that the ALJ's decision is supported by substantial evidence. (Doc. 14, p. 4). The court will consider each of these in turn

### 1. Dr. Riase

Dr. Raise, a podiatrist, treated the plaintiff for issues with her feet beginning in 2014. (Tr. at 414). Throughout 2014 to 2016, he performed a series of medical procedures on her feet, including osteotomies on her toes, removal of numerous areas that pathology reports showed were consistent with "callus" or epithelial inclusion cysts, and trigger point injections to painful areas of her feet. (Tr. at 412-41, 463-85, 688-700). On October 21, 2014, Dr. Raise wrote in his treatment notes that Mrs. Smith was "unable to work fulltime or part time until further notice"[2] because she was unable to stand for long periods of time. (Tr. at 483). Additionally, more than a year later, on November 18, 2015, Dr. Raise completed a Clinical Assessment of Pain in which he opined that Smith experienced pain that would be "distracting to adequate performance of daily activities," would be exacerbated by increased activity such as to "cause distraction from task or total abandonment of task," and that her medication would cause "mildly troublesome"

---

[2]    This characterization by Dr. Riase is plainly ambiguous in that the "until further notice" limitation of the opinion suggests that Mrs. Smith's foot pain was a transient condition related temporarily to the foot surgeries she had, and not a permanent condition or disability. This alone would entitle the ALJ to give the opinion little weight.

symptoms. (Tr. at 580). The ALJ afforded little weight to Dr. Riase's opinion because whether a claimant is disabled is a decision that is reserved to the Commissioner. (Tr. at 64).

Despite Smith's arguments that the ALJ summarily rejected Dr. Riase's opinion, this is not the case. As an initial matter, the ALJ explicitly afforded "little weight" to the opinion, not zero weight; therefore, it was not summarily rejected. Additionally, the ALJ is free to afford less than full weight to the opinions of any physician, including a treating physician, where there is good cause to do so, and here, there is substantial evidence to support the ALJ's determination to afford "little weight" to the opinion.

It is true that at the majority of her visits with Dr. Riase, Smith reported that she was experiencing foot pain. See e.g., Tr. at 646-85. However, the nature of Dr. Riase's notes is such that the plaintiff was never asked to rate her pain on a scale from 1-10 or to in any other way to quantify the level of pain that she was experiencing. See e.g., id. She was always noted to be in no acute distress (written in Dr. Riase's records as "NAD") and to be oriented to time and place. Id. She also was most often in a "good" general mood. Id. Additionally, Dr. Riase recorded in a few places that the plaintiff's condition was "uneventful," that her condition had improved, or that she had no complaints. See Tr. at 466-9, 473, 476-7, 481, 484, 485. Together, these notations are substantial evidence that the

plaintiff was not experiencing the level of disabling pain that she alleged and that Dr. Riase opined.

When these records are examined in the context of plaintiff's other medical records during the same timeframe, the inconsistency of the limitations described by Dr. Riase becomes clear. On September 27, 2014, less than one month before Dr. Riase opined that the plaintiff was totally disabled, Plaintiff had a consultative examination with Dr. Davenport. In his report, Dr. Davenport noted that it was difficult to get a clear picture of Smith's capabilities because she consistently gave poor effort, was overall uncooperative, and refused even to attempt some of the assessments. (Tr. at 459-61). Smith reported that she experienced pain on a scale of 10 out of 10 nearly all the time. Id. at 457. However, Dr. Davenport noted that she was "very comfortable" when she was distracted. Id. Additionally he noted that the patient ambulated "without difficulty and without assistive device." Id. Dr. Davenport opined that Smith had no functional limitations due to her foot pain. Id. at 461.

On October 20, 2015, again less than one month before Dr. Riase gave his Clinical Assessment of Pain, Mrs. Smith was treated by Dr. Sovic for pain management associated with her shoulder and right arm. (Tr. at 582). She reported to Dr. Sovic that she was experiencing "RUE[3] pain." Notably, she did not

---

[3] It is evident from other records that RUE refers to right upper extremity.

report any pain in her feet.  Id.  Furthermore, Dr. Sovic had prescribed for the plaintiff Tylenol #3, Neurontin, and Mobic for her pain.  Id.  However, in a May 2015 urinalysis screening, the plaintiff did not have any Tylenol #3 in her system, from which Dr. Sovic  presumed she was not taking the pain medication that had been prescribed for her.  Id.  Together, the notations in Dr. Riase's records and the plaintiff's other medical records from the same relevant time periods provide substantial evidence to support the ALJ's decision to give only "little weight" to Dr. Riase's opinion.

## 2. Dr. Sovic

Though Dr. Sovic did not give an explicit opinion regarding the plaintiff's functional capacity, the ALJ noted that he reviewed the records and found them to be helpful in determining the nature of the plaintiff's impairments.  (Tr. at 65). Therefore, the records from Dr. Sovic were given "substantial weight."  Id. Plaintiff has argued that the ALJ did not mention the fact that Dr. Sovic administered several epidural injections into the plaintiff's cervical spine to help control her arm and shoulder pain.  (Doc. 11, p. 11).  In the briefs plaintiff accused the ALJ numerous times of mischaracterizing the evidence; however, this overlooks the ALJ's discussion of all the evidence in the case.  In the quote that is

the focus of the plaintiff's argument, the ALJ was referring to Exhibit 4F[4]. See

(Tr. at 61). Exhibit 4F covers Dr. Sovic's treatment of the plaintiff from March 4,

2014, through August 12, 2014. During this time period, the plaintiff was not

given cervical epidural injections. (Tr. at 403-11). Rather, she presented with

complaints of pain and was treated conservatively with medication. Id. It is true

that plaintiff's treatment did eventually progress to more invasive measures, like

cervical epidural injections, but it is also true that the ALJ discussed the records

related to epidural injections two pages later in his decision. See Tr. at 63. Exhibit

14F contains Dr. Sovic's records from September 9, 2014, through November

2015, which cover the cervical epidural injections the plaintiff received. The ALJ

properly characterized and summarized the treatment records from Dr. Sovic, and

he reviewed all of these records.

   *3. Dr. Givhan*

   Dr. Givhan also did not provide an opinion as to the plaintiff's functional

capacity. However, the ALJ found his records to be helpful in determining

plaintiff's capacities and afforded them substantial weight. (Tr. at 65). Plaintiff's

counsel has argued that the case must be remanded because the ALJ committed a

---

[4] The ALJ discussed the plaintiff's medical history in chronological order. Exhibit 4F contains documents relating to plaintiff's first three visits with Dr. Sovic. Exhibit 14F contains the rest of Dr. Sovic's treatment records.

"significant error" when he evaluated Dr. Givhan's records. The ALJ stated specifically, in relevant part:

> Only mild tenderness to palpation was noted in her lumbar spine, and Dr. Givhan indicated that the claimant has degenerative spondylitis. However, he also indicated that the claimant's lumbar stenosis, which was again identified on her recent MRI, was *not* causing her problems. Additionally, Dr. Givhan told the claimant that surgical intervention was not necessary.

(Tr. at 63) (Italics added for emphasis). It is correct, as plaintiff has pointed out, that Dr. Givhan actually said, "I do think this is causing this patient's problems," when referring to the plaintiff's stenosis and spondylosis. (Tr. at 488). However, the court disagrees that this error is significant or requires remand.

Although this appears simply be a typographical error, but even if it is not, it is a harmless error. Regardless of whether the ALJ read the records to indicate that the doctor did or did not believe that the stenosis was the cause of the plaintiff's problems, the issue is still the same before the ALJ. The ALJ reviewed evidence from objective medical testing which showed the presence of stenosis. (Tr. at 61-4). Additionally, he reviewed subjective pain reports from the plaintiff that allege severe and disabling pain. (Tr. at 60). Finally, he reviewed medical records regarding the patient's treatment for her back condition. (Tr. at 61-4). It does not matter whether the ALJ mistakenly thought Dr. Givhan did not believe that the pain was caused by spondylosis, stenosis, or some other condition. Rather, it is

clear from the ALJ's discussion of the records that he correctly concluded that Dr. Givhan did not believe the pain was significant enough to warrant surgery. It is clear from Dr. Givhan's notes that he found that conservative treatment was appropriate for Smith, that she reported intermittent pain in her legs, that her muscle strength was 5/5, and she had only mild tenderness to palpation. See (Tr. at 63).

The ALJ did not misrepresent the evidence presented in the records of Dr. Riase, Dr. Sovic, or Dr. Givhan. Moreover, the inconsistencies among these physicians' observations of the claimant's pain creates substantial evidence for the ALJ to reject the only explicitly stated opinion that the plaintiff was disabled "until further notice" made by Dr. Riase.[5]

The Appeals Council

Except in a few limited situations, a claimant seeking benefits may present new evidence to the Appeals Council not presented to or considered by the ALJ. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). When such evidence is submitted, the Appeals Council must consider it if it is "new, material, and chronologically relevant." Id. If the Appeals Council declines to consider such evidence, that decision is a final decision that is subject to review

---

[5]   It is true that a nurse practitioner also expressed the opinion that the plaintiff was totally and permanently disabled.  Tr. at 560.  Aside from the usual rule that it is the Commissioner's duty to make determinations related to ability or disability to work, this opinion also is undermined by Dr. Givhan's conclusion that the plaintiff's back pain did not warrant surgical intervention.

by the district court.  Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1320 (11th Cir. 2015) (citing Keeton, Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).  New evidence refers to evidence that is not already in the record and thus, is non-cumulative.  Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986).  Material evidence is evidence that, if accepted, would have a "reasonable possibility" of changing the result of the case.  Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987).  Additionally, the Eleventh Circuit has recognized that evidence may be chronologically relevant even if it was produced after the end of the relevant time period if it helps shed light on the claimant's condition during the relevant period.  Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir. 1983) (finding that medical records and an opinion from a treating physician who started seeing the patient after the relevant time period should have been considered).

### 1. Records from Pain Management Service dated 07-06-2016

Mrs. Smith submitted to the Appeals Council records from a cervical epidural block with Dr. Lansden and records from Dr. Sovic that were dated from July 6, 2016, through August 5, 2016.  The Appeals Council declined to consider this new evidence, saying that the "evidence does not show a reasonable possibility that it would change the outcome of the decision."  (Tr. at 2).  The issue then is one of materiality.

The evidence is material and the Appeals Council committed reversible error if the records would have a reasonable possibility of resulting in an ALJ finding that Mrs. Smith was entitled to benefits. See Hyde, 823 F.2d at 459. The records detail plaintiff receiving another cervical spine epidural injection on August 5, 2016. (Tr. at 72-3). She reported that her prior injection had provided good pain relief for a while, but that her condition had worsened again. (Tr. at 72). Additionally, plaintiff was treated by Dr. Sovic on July 6, 2016, and August 3, 2016, for a refill of her medications. (Tr. at 82-5). In records that appear to be exact duplicates, the plaintiff presented to Dr. Sovic only for a refill of her medication. Id. Plaintiff rated her pain as a 9/10 and appeared "uncomfortable." Id. However, her physical exam was unremarkable at rest and her motor exam showed only a slight impairment on her right side (4 out of 5). Id. These records are consistent with the other evidence of record, including that the plaintiff had received prior cervical injections. Additionally, the record contains ample medical records of plaintiff's complaints of extremely severe pain despite normal or only mildly restricted physical functioning. Because there is no reasonable possibility that these new records might change the outcome of the determination made by the ALJ, the court finds that the Appeals Council did not commit error in concluding that this evidence was not material.

*2. Post-Decision Evidence*

The plaintiff submitted medical records to the Appeals Council from visits with her doctors that occurred after the ALJ's opinion. (Tr. at 2). The Appeals Council found that the evidence did not relate to the time period at issue and was not relevant to whether the plaintiff was disabled before August 23, 2016, the date of the ALJ's decision. (Tr. at 2). The submitted records included: records from Dr. Wesley Dubose dated August 31, 2016; records from Dr. Scott dated September 1, 2016 to October 19, 2016; records from Dr. Riase dated August 31, 2018 to November 15, 2016; and records from Dr. Sovic dated August 31, 2016 to September 28, 2016. In briefing, plaintiff's counsel has argued only that the records from Dr. Riase and Dr. Sovic should have been considered. (Tr. at 2).

The plaintiff submitted records from two appointments with Dr. Sovic on August 31, 2016 and September 28, 2016. (Tr. at 31-5). These records document the same complaints of pain in the right upper extremity. Id. On August 31, 2016, the plaintiff notes that her levels of pain and functioning are the same as her prior visit, which occurred before the ALJ's decision. (Tr. at 34). Plaintiff received the same conservative treatment and medication management services as she had during the relevant disability time period. (Tr. at 31-5). While the records might shed light on the plaintiff's problems before August 23, 2016, they are essentially

immaterial because they do not create a reasonable possibility that the outcome of the ALJ's decision would change if they were considered.

The plaintiff also submitted records from Dr. Raise from appointments on August 30, 2016, October 10, 2016, November 1, 2016, and November 15, 2016. (Tr. at 39-50). She also submitted records from an osteotomy on her toe on October 18, 2016. Id. at 43. These records show the same complaints of foot pain and keratosis. See e.g., Id. at 40. It is not at all clear that the conditions treated in these records existed before the time of the ALJ's decision. Certainly they are similar to such conditions, but the records do not make clear whether these post-decision conditions arose before or after the date of the decision.

It is clear from the Appeals Council's description that they looked at the evidence and found it not relevant to the time period. While this seems to be a cursory review, there is no reason to remand the case. The Appeals Council is required only to review evidence that is new and non-cumulative and that is material. Caulder, 791 F.2d at 875. Here the evidence is cumulative of other evidence that was before the ALJ and considered by the ALJ in making the determination of the plaintiff's RFC. Additionally, the evidence is not material and does not show a reasonable possibility of changing the administrative decision. Therefore, the Appeals Council's decision to decline to review or exhibit the post-decision records was in accord with law and supported by substantial evidence.

To the extent that the plaintiff cites to <u>Vega</u> to support the assertion that the case is due to be remanded, this is without merit in the case. (Doc. 11, p. 14). In <u>Vega</u>, plaintiff had a herniated disc that was discovered only after the ALJ rendered his decision, and she had surgery to correct the problem. The Eleventh Circuit found that this warranted remand. The diagnosis of a herniated disc provided a new diagnosis that was unavailable to the ALJ and contradicted the findings of the ALJ. 265 F. 3d 1214, 1218-9. In the instant case, however, the records that were not considered by the Appeals Council did not warrant remand to the ALJ. They did not present a wholly new explanation for the plaintiff's allegations of disabling pain, but merely continuing treatment of problems known and treated prior to the ALJ's decision. Nor do these post-decision records directly contradict the findings of the ALJ. The Appeals Council's decision not to remand the case is supported by substantial evidence.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mrs. Smith's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law. A separate order will be entered.

DONE this 20th day of March, 2019.

                                                  _____

                                                  T. MICHAEL PUTNAM

                                                  UNITED STATES MAGISTRATE JUDGE